IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

RANGEL RODRIGUEZ,

      Petitioner,

v.

FEDERAL BUREAU OF PRISONS; and T. JOHNS,

      Respondents.

CIVIL ACTION NO.: 5:15-cv-53

## ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Petitioner Rangel Rodriguez ("Rodriguez"), who is currently housed at D. Ray James Correctional Facility ("D. Ray James") in Folkston, Georgia, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. (Doc. 1.) Respondent filed a Response. (Doc. 6.) Rodriguez filed a Reply to Respondent's Response. (Doc. 8.) For the reasons which follow, I **RECOMMEND** that the Court **DISMISS** Rodriguez's Petition, **CLOSE** this case, and **DENY** Rodriguez *in forma pauperis* status on appeal.

## BACKGROUND

In 2006, Rodriguez was convicted in the Southern District of California for bringing in aliens for financial gain and for transportation of illegal aliens. (Doc. 6-1, p. 23.) In 2003, he was convicted of being a deported alien found in the United States. (Id. at p. 28.) He is currently serving an aggregate term of incarceration of 188 months. (Id. at p. 24.) Rodriguez has been housed at D. Ray James since October 15, 2014. (Id. at p. 2–3.) Currently, the Bureau of Prisons projects him to be released on September 23, 2016, via good conduct time release, to be followed by three years of supervised release. (Id. at p. 3.)

**DISCUSSION**

In this Petition, Rodriguez takes issue with discipline he received several years ago while he was housed at the Metropolitan Correctional Center in San Diego, California ("Metropolitan Correctional"). Rodriguez was housed at Metropolitan Correctional from August 9, 2002, to January 27, 2004. Id. On December 7, 2002, prison officials at Metropolitan Correctional issued Rodriguez an Incident Report for using a telephone to further criminal activity, in violation of Code 197 of the BOP discipline regulations. (Id. at p. 37–39.) Rodriguez had a hearing before a Discipline Hearing Officer ("DHO") on December 27, 2002. Id. The DHO found that Rodriguez committed the prohibited act as charged and sanctioned him with a loss of 41 days of good conduct time, 30 days of disciplinary segregation, and 30 days loss of telephone privileges. Id. Rodriguez received a copy of the DHO Report on January 14, 2003. Id. The DHO Report states, "The inmate has been advised of his right to appeal this action within 20 calendar days under the Administrative Remedy Procedure." (Id. at p. 39.)

In his Petition, Rodriguez stated that he was "seeking the BOP to give back my 41 days that was taken away from me, that was to be deterrent for future misconduct." (Doc. 1, p. 6.) He provided no further support for this request. On September 29, 2015, the Respondents filed their Response to the Petition and argued that the Court should dismiss the Petition for Rodriguez's failure to exhaust his administrative remedies. (Doc. 6.) In his Reply, Rodriguez states that he asked to appeal the DHO's decision, but he could not because he was in the special housing unit. (Doc. 8.) Rodriguez also argues that the DHO violated his due process rights by not allowing him to call witnesses on his behalf at the hearing. Id.

Respondents further asserts that, even were Rodriguez's claims properly brought under Section 2241 Petition, his claims nevertheless are subject to dismissal because he failed to exhaust his administrative remedies before he filed his Petition. (Doc. 9, p. 7.)

## I. Whether Rodriguez Exhausted his Administrative Remedies

### A. Legal Requirements for Exhaustion

The Eleventh Circuit has held that a Section 2241 petitioner's failure to exhaust administrative remedies is not a jurisdictional defect. Santiago-Lugo v. Warden, 785 F.3d 467, 474 (11th Cir. 2015); see also Fleming v. Warden of FCI Tallahassee, No. 5–11471, 2015 WL 7280966, at * 1 (11th Cir. Nov. 18, 2015) ("[Section] 2241's exhaustion requirement was judicially imposed, not congressionally mandated, and . . . nothing in the statute itself support[s] the conclusion that the requirement [is] jurisdictional."). Nevertheless, the Eleventh Circuit has noted "that the exhaustion requirement is still a requirement and that courts cannot 'disregard a failure to exhaust . . . if the respondent properly asserts the defense.'" Fleming, 2015 WL 7280966, at *1 (citing Santiago-Lugo, 785 F.3d at 475). Failure to exhaust administrative remedies is an affirmative defense and inmates are not required to specially plead or demonstrate exhaustion in their complaint. Jones v. Bock, 549 U.S. 199, 216 (2007). However, the normal pleading rules still apply, and when an affirmative defense appears on the face of a complaint making it clear that a prisoner cannot state a claim for relief, dismissal is warranted. Id. at 214–15. Thus, when a party admits in his complaint or petition that he has not exhausted the grievance process, dismissal is warranted. See Okpala v. Drew, 248 F. App'x 72 (11th Cir. 2007); Cole v. Ellis, No. 5:10-CV-00316-RS-GRJ, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); Rashid v. Liberty Cty. Jail, CV410-092, 2010 WL 3239241, at *1 n.1 (S.D. Ga. May 3, 2010) ("Nothing in Jones . . . forbids the Court from dismissing a complaint pursuant to

3

§ 1997e(a) if it is clear from the face of the complaint that the prisoner has not exhausted all administrative remedies available to him.").

The requirement that the exhaustion of remedies occur "first in an agency setting allows 'the agency [to] develop the necessary factual background upon which decisions should be based' and giv[es] 'the agency a chance to discover and correct its own errors.'" Green v. Sec'y for Dep't of Corr., 212 F. App'x 869, 871 (11th Cir. 2006) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998) (first alteration in original)). Furthermore, requiring exhaustion in the prison setting "eliminate[s] unwarranted federal-court interference with the administration of prisons" and allows "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." Woodford v. Ngo, 548 U.S. 81, 93 (2006).

The Supreme Court has noted exhaustion must be "proper." Woodford v. Ngo, 548 U.S. 81, 92 (2006). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.[1] In other words, an institution's requirements define what is considered exhaustion. Jones v. Bock, 549 U.S. 199, 218 (2007). It is not the role of the court to consider the adequacy or futility of the administrative remedies afforded to the inmate. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). The court's focus should be on what remedies are available and whether the inmate pursued these remedies prior to filing suit. Id.

---

[1] Although Woodford was a civil rights suit rather than a habeas petition, the Court "noted that the requirement of exhaustion is imposed by *administrative law* in order to ensure that the agency addresses the issues on the merits." Fulgengio v. Wells, CV309-26, 2009 WL 3201800, at *4 (S.D. Ga. Oct. 6, 2009) (emphasis in original) (quoting Woodford, 548 U.S. at 90) (internal punctuation omitted). Thus, exhaustion requirements are applicable to habeas petitions.

Thus, under the law, prisoners must do more than simply initiate grievances; they must also appeal any denial of relief through all levels of review that comprise the administrative grievance process. Bryant v. Rich, 530 F.3d 1368, 1378 (11th Cir. 2008) ("To exhaust administrative remedies in accordance with the PLRA, prisoners must 'properly take each step within the administrative process.'") (quoting Johnson v. Meadows, 418 F.3d 1152, 1157 (11th Cir. 2005)); Sewell v. Ramsey, No. CV406-159, 2007 WL 201269 (S.D. Ga. Jan. 27, 2007) (finding that a plaintiff who is still awaiting a response from the warden regarding his grievance is still in the process of exhausting his administrative remedies).

### B. Standard of Review for Exhaustion

"Even though a failure-to-exhaust defense is non-jurisdictional, it is like" a jurisdictional defense because such a determination "ordinarily does not deal with the merits" of a particular cause of action. Bryant, 530 F.3d at 1374 (internal punctuation and citation omitted). Further, a judge "may resolve factual questions" in instances where exhaustion of administrative remedies is a defense before the court. Id. In these instances, "it is proper for a judge to consider facts outside of the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Id. at 1376.

In Turner v. Burnside, 541 F.3d 1079 (11th Cir. 2008), the Eleventh Circuit set forth a "two-step process" that lower courts must employ when examining the issue of exhaustion of administrative remedies. First, the court is to take the plaintiff's version of the facts regarding exhaustion as true. Id. at 1082. If, even under the plaintiff's version of the facts, the plaintiff has not exhausted, the complaint must be dismissed. Id. However, if the parties' conflicting facts leave a dispute as to whether plaintiff has exhausted, the court need not accept all of plaintiff's facts as true. Id. Rather, "the court then proceeds to make specific findings in order to resolve

the disputed factual issues[.]" Id. "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." Id. at 1083. The Eleventh Circuit has held that a district court may consider materials outside of the pleadings and resolve factual disputes regarding exhaustion in conjunction with a Rule 12(b)(6) motion to dismiss so long as the factual disputes do not decide the merits of the case. See Bryant, 530 F.3d at 1376–77.

### C. Analysis of Plaintiff's Efforts at Exhaustion

As an inmate at Metropolitan Correctional, Rodriguez was afforded the BOP's administrative remedy procedure. Through this procedure, inmates may file a grievance relating to any aspect of their imprisonment and seek review of that grievance through several steps. 28 C.F.R. § 542; (Doc. 6-1, pp. 4–5, 44–60.) Generally, the inmate must first attempt to resolve an issue of concern informally by presenting the issue to correctional staff. 28 C.F.R. § 542.13. If no resolution is reached, the must submit a formal written administrative remedy request to the Warden within 20 days of the incident giving rise to the grievance. 28 C.F.R. § 542.14(a). The form which inmates utilize at this step is commonly known as a "BP-9." (Doc. 6-1, p. 4.) If the inmate is unsatisfied with the Warden's response to the BP-9, he may take an initial appeal to the appropriate Regional Director within 20 days of when the Warden signed the response. 28 C.F.R. § 542.15. The form used at the regional level is commonly referred to as a "BP-10." (Doc. 6-1, p. 5.) The inmate may take a final appeal to the BOP's Office of General Counsel in Washington, D.C., within 30 days of when the Regional Director signed the response to the BP-10. 28 C.F.R. § 542.15. This final appeal form is commonly referred to as a "BP-11" form. Inmates who contest DHO decisions must appeal directly to the Regional Director within twenty

days of the decision. 28 C.F.R. § 542.14. Consequently, they may bypass the institutional level remedies. Id.

Inmates housed at D. Ray James also have access to the BOP administrative process, and they may file grievances on BOP related matters. (Doc. 6-1, pp. 62–65.) If dissatisfied with the outcome of a DHO hearing, the inmate may appeal to the BOP's Administrator of the Privatization Management Branch, so long as the appeal involves BOP-related matters. (Id. at pp. 6, 62–65) Examples of BOP-related issues include classification, designation, sentence computation, and removal or disallowance of good conduct time. Id. If the inmate is not satisfied with the Privatization Administrator's response, the inmate may make a final appeal to the BOP's Office of General Counsel. Id.

If an inmate files a BOP administrative remedy at any level (including locally, with the warden as well as regionally and nationally), the BOP's SENTRY computer database will record that remedy. Pichardo v. Zenk, No. CV511-069, 2011 WL 5102814, at *2 (S.D. Ga. Sept. 27, 2011), *report and recommendation adopted*, No. CV511-069, 2011 WL 5103758 (S.D. Ga. Oct. 26, 2011); (Doc. 6-1, p. 6.) A review of that database reveals that Rodriguez has not filed any administrative remedies concerning the January 2003 DHO decision that he seeks to contest in this case. (Doc. 6-1, pp. 7, 66–71.) Rodriguez concedes that he did not appeal the DHO decision and that he has not filed any other administrative remedy before filing this case. Thus, even taking Rodriguez's version of the facts as true under the first Turner step, Rodriguez did not exhaust his administrative remedies.

Rodriguez argues that he did not file an appeal of the DHO decision because he was in the special housing unit. (Doc. 8.) Thus, in an abundance of caution, the Court will proceed to the second Turner step and make specific findings in order to resolve any disputed factual issues.

Rodriguez's proffered rationale for not pursuing any administrative remedies cannot withstand this review.

Rodriguez was placed in the special housing unit from December 22, 2002, to January 25, 2003. (Doc. 6-1, p. 38.) The DHO issued his decision on January 13, 2003, and provided a copy to Rodriguez on that same date. (Id. at p. 39.) As the DHO Report advised Rodriguez, he had twenty days to file an appeal which resulted in an appeal deadline of February 2, 2003. Thus, after he was released from the special housing unit on January 25, 2003, Rodriguez had eight days until the deadline to appeal the DHO decision. Moreover, from January 25, 2003, Rodriguez had 4,563 days (12 years, 5 months, and 3 days) to file an administrative remedy prior to his filing of this action on July 24, 2015. Rodriguez has not argued (and cannot plausibly argue) that his placement in the special housing unit somehow precluded him from pursuing any administrative remedies in the more than a decade before he filed this Petition. Even if Petitioner had made such an argument, Petitioner's grievance history would belie it. (Doc. 6-1, pp. 67–71.) He filed a number of administrative remedies from 2010 to September of 2015. Id. None of those filings raised any issue with the DHO decision. Id.

For all of these reasons, Rodriguez failed to exhaust his administrative remedies prior to filing this Petition, and the Court should **DISMISS** his Petition as a result.

## II.    Leave to Appeal *In Forma Pauperis*

The Court should also deny Rodriguez leave to appeal *in forma pauperis*. Though Rodriguez has, of course, not yet filed a notice of appeal, it would be appropriate to address these issues in the Court's order of dismissal. Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed"). An appeal cannot be taken *in forma pauperis* if the trial court certifies that

the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Given the above analysis of Rodriguez's Petition and Respondent's Response, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **DISMISS** Rodriguez's Petition for Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241, (doc. 1), and **CLOSE** this case. I further **RECOMMEND** that the Court **DENY** Rodriguez leave to proceed *in forma pauperis*.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within **fourteen (14) days** of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be

served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon Rodriguez and Respondents.

**SO ORDERED**, this 6th day of June, 2016.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA